UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Case No. 17-cr-20469-02

Plaintiff,

Honorable Sean F. Cox

v.

GREGORY HENDON,

Defendant

_____/

## SUPPLEMENT TO DEFENSE'S MOTION TO SUPPRESS EVIDENCE

### Introduction

On a warm summer night in the area of Detroit coined "the Cass Corridor", Detroit Police Officer Thomas Grzywacz and his partner rolled up to an apartment in an unmarked, unidentified "Crown Vic". It was August 2013 and they were not in traditional police uniforms; they were working "special ops," and targeting the area. PO Grzywacz saw some people outside the building look in his direction, and run into the apartment building. (Evidentiary Hearing Transcript, ECF No. 60, Pg ID 257).

What happened from this point is controverted. One of the individuals outside was "possibly" Mr. Hendon or "there was no question it was Mr. Hendon" (*Id.* Pg ID 273) or "believed to be Gregory Hendon"(*Id.* Pg ID 257). There may have been others with Mr. Hendon, "one or two" (*Id.)* or "there were two" (*Id.* Pg ID 273). PO Grzywacz called for back up but isn't sure

1

exactly when and does not remember if he waited for back up before going inside the apartment with his key. (*Id.* Pg ID 274).

PO Grzywacz had a key to the front door of the apartment complex that was given to him by an unknown someone or some-ones in a construction truck who purported to have ownership rights.  He does not know when or from whom he received the key. He did not get a name and had never seen them since. (*Id.* Pg ID 259-262, 269-271,279-280). He cannot account for where the police kept this key, or who had access to the key when he was not on duty. There was no procedure for checking out the key or returning the key. (*Id.* Pg ID 281-282).  There exists no official record of the key. PO Grzywacz may have had two keys (*Id.* Pg ID 262), or he may have had ten keys (*Id.* Pg ID 276, 281).

After entering the secured apartment building's common area, PO Grzywacz may have "swept" the first floor apartments or may have just looked down the hall way. (*Id.* Pg ID 278). He may have checked all the "known" vacant apartments on his "list" for which he had keys, or he may have proceeded immediately to the second floor. (*Id.* Pg ID 277-279). An unknown person may have given him "lists" of vacant apartments or he may have just written down a verbal list he was given. (*Id.* Pg ID 267-270). The list may have been written down in his ticket book, which he kept in his trunk (Id. Pg ID 281), or it may have been kept in a green ledger book which was kept in a locked office at the police station (*Id.* Pg ID 276). The keys may

have been kept in a file cabinet at work or in a locker or in a locked office. (*Id.* Pg ID 281-282). There is no remaining record of the lists, the keys, or any corroboration of this confusing and contradictory testimony.

With noise and commotion, four officers came through the empty hallway made of plaster, up a granite staircase, possibly checking other apartments in their sweep, and "made entry" to apartment 201. Once he got to apartment 201, PO Grzywacz either knocked and announced or he didn't. (*Id.* Pg ID 285). He either used the key that was given to him or the door was unlocked and he entered. *(Id.* Pg ID 261-262). Yet with his clouded memory, he definitively remembers that he did not break down the door and the door was not boarded up.

Upon entry the police found contraband sitting on a table mere feet from the door, front and center. The person who was so wary to run from the police when he was outside doing nothing, sat at a table with drugs and money while four police clamored down halls and up stairs.

The utilities were on, there was a kitchen, bathroom and living area with furniture including a bookcase, table, chairs and a mattress. There were three individuals inside the apartment, one being Mr. Hendon who was known to PO Grzywacz. The police recovered heroin, marijuana, a shotgun, cell phones, money and a scale. (*Id.* Pg ID 263-265).

Assuming the testimony supports that Mr. Hendon was the individual who was outside that warm summer night, and Mr. Hendon was the

individual who ran into the apartment building, it is uncontroverted that the individual did no act reasonably suspicious or dangerous. (*Id.* Pg ID 271-272). There was no probable cause to arrest, no crime committed in the presence of the officer, nor evidence that PO Grzywacz ran a LEIN check prior to the arrest to determine if Mr. Hendon had outstanding warrants. The officers were not on a police run, did not have a report to which they were responding. Certainly there was nothing wrong with police patrolling the Cass Corridor on August 3, 2013. However, an inarticulable hunch does not permit them to invade a secured apartment building and then proceed into an interior unit, with or without a key, and undeniably, without a warrant.

1. **The evidence must be suppressed because Mr. Hendon was unconstitutionally stopped.**

A *Terry* stop is permissible only if law enforcement officers had a "particularized and objective basis for suspecting the particular person stopped of criminal activity," *United States v. Cortez,* 449 U.S. 411, 417-18 (1981), and "were aware of specific and articulable facts which gave rise to reasonable suspicion." *United States v. Davis* 514 F.3d 596, 608 (6th Cir. 2008).  There were no observations, prior to Officer Grzywacz opening the apartment door, of criminal activity. Taken as a whole, the officer chased him based on an inarticulable hunch, finding Mr. Hendon in a secured apartment.

The government relies on additional factors as considerations in forming reasonable suspicion. For example, the government argued that the

neighborhood was a high crime area. But the Sixth Circuit has instructed that contextual factors such as high crime areas should not be given too much weight because they raise concerns of racial, ethnic, and socioeconomic profiling. *United States v. Young*, 707 F.3d 598, 603 (6th Cir. 2012). Moreover, the officer's statement is not supported with corroborating evidence. *See United States v. Caruthers*, 458 F.3d 459, 467 (6th Cir. 2006) ("The citing of an area as high crime requires careful examination by the court…District Courts must carefully examine the testimony of officers in cases such as this, and make a fair and forthright evaluation of the evidence they offer…") The Government also argues that unprovoked flight gives rise to justification for a *Terry* stop. This argument presumes that the presence of an unmarked, unidentified dark vehicle was known by Mr. Hendon to be the police, another fact not supported by the testimony.

### 2. The evidence must be suppressed because Officer Grzywacz testimony was not credible.

The Court heard conflicting testimony from Officer Grzywacz on every point of contention. Counsel will not belabor the point; the evidentiary hearing testimony of the witness speaks for itself. Officer Grzywacz wanted to arrest Mr. Hendon and did arrest Mr. Hendon. He was determined to find Mr. Hendon inside the apartment. How he justified what happened from the point in time that he believed he saw him outside to when he found him in

apartment 201 is without merit and tarnishes the entirety of the

Government's case.

In *United States v Smith*, No. 17-cr-20617, 2018 WL 1755537 (E.D.

Michigan, Southern Division 04/12/2018, the issue before the Court was

suppression of a firearm and statement. After holding an evidentiary

hearing, the court found that the police were not truthful witnesses.

> Because both Vang and Jackson were not truthful at the
> suppression hearing, the Court does not believe other points of their
> testimony, as it is entitled to do. See United States v. Martinez, 356
> F.Supp.2d 856, 870 (M.D. Tenn. 2005) (applying the doctrine falsus in
> uno, falsus in omnibus – false in one thing, false in everything – to
> discredit an agent's entire testimony due to certain inconsistencies
> with the record). Thus, the Court concludes that the testimony
> regarding "blading" and the observation of a "bulge" in Smith's pocket
> are similarly not worthy of belief.  *(Id.* at Pg.3).

The defendant's motion to suppress was granted because the Court found the

police officer's testimony blatantly incredible, false, and unsupported which

then tainted the entirety of the record.

The Fourth Amendment "is designed to prevent arbitrary and

oppressive interference by enforcement officials with the privacy and

personal security of individuals." *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984).

Warrantless searches "are per se unreasonable under the Fourth Amendment

– subject only to a few specifically established and well-delineated

exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967).

Defense requests that this Honorable Court find that based on the

inconsistencies, evasive answers, and uncorroborated testimony of PO

Grzywacz, "falsus in uno, falsus in omnibus":  the officer's conduct violated

the Fourth Amendment.

**2.  The evidence must be suppressed because Officer Grzywacz did not have a warrant to enter the apartment building or the apartment unit.**

Mr. Hendon's constitutional right to be free from unreasonable

searches and seizures was violated by the police officers' intrusion into the

secured apartment. The Government's response that Mr. Hendon lacks

standing to challenge the seizure of evidence found in the apartment must be

carefully and judiciously examined. While traditional standing by Mr.

Hendon was not established at the evidentiary hearing, the factual assertions

that underlie the government's opposition are in conflict and have not been

substantiated. First, the apartment building was not vacant. Officer

Grzywacz's testimony about lists and keys was inconsistent, impeached and

without corroboration. The police would not have had probable cause to

secure a valid warrant with this stale and uncorroborated information.

Claiming the apartments were vacant was their ruse to get around the 4th

Amendment. Second, Officer Grzywacz's testimony regarding how the police

entered, swept, and within 2-3 minutes targeted apartment 201 was

incredible and unbelievable. Based on this testimony, Mr. Hendon ran from

the police when he was outside doing nothing, yet sat at a table with drugs

and money while four police clamored down halls and up stairs. This is

simply not believable. Third, and most importantly, egregious police misconduct justifies the sanction of suppression of the evidence. *United States v Smith*, No. 17-cr-20617, 2018 WL 1755537 (E.D. Michigan, Southern Division 04/12/2018.

In *United States v. Scott*, 270 F.3d 30, 44-45 (2001) the First Circuit encouraged courts to review the incentive for police misconduct occasioned by a decision which would allow evidence seized in violation of the Fourth Amendment to be used at trial, whether through the doctrines of inevitable discovery, independent source or against a third party who lack standing to challenge the illegal search. The Court recognized that evidence seized in violation of a third party's rights is not "excusable for that reason alone…at least in the absence of egregious misconduct by police. In *Scott,* the court identified *U.S. v. Rullo,* 748 F.Supp 36 (D. Mass. 1990) as a case involving egregious police misconduct as a result of the excessive force employed by the officers. Obviously there are no excessive force allegations or inevitable discovery issues in this case, but the conduct is nonetheless egregious where the police officer targeted Mr. Hendon and entered a secure apartment without a warrant, probable cause, or reasonable suspicion. As a result, the need for a deterrence here is high because of the risk that by violating a third party's rights, police could ultimately obtain evidence against a target which may not be suppressed based upon the current case law as it relates to traditional standing. This deterrent should be applied to the instant case in

8

support of the Fourth Amendment and the Constitution of the United States of America.

Defense requests that this Honorable Court find that based on the inconsistencies, evasive answers, and uncorroborated testimony of PO Grzywacz, "falsus in uno, falsus in omnibus"; the officer's conduct violated the Fourth Amendment.

## Conclusion

**"But he didn't tell us why he (referring to Police Officer Grzywacz) went after two defendants in the apartment complex?"**

**-Question asked by the Court**
**(**Evidentiary Hearing Transcript, ECF No. 60, Pg ID 293)

The officer in this case was determined to chase and arrest Mr. Hendon as soon as he saw him standing outside. He used suspiciously obtained keys and phantom "lists" to accomplish this goal. He would not have been able to show probable cause to obtain a search warrant had he tried with the stale information from unknown, uncorroborated and unidentified people. To sanitize his conduct, "special ops" claimed the building was vacant. Officer Grzywacz and his team proceeded to do what they wanted, where they wanted and without any concern for constitutional adherence. The Court should find the police conduct unconstitutional and suppress the drugs, firearms, money, cell phones and scales, as fruits of unconstitutional conduct.

Respectfully Submitted,

s/ Beth G. Morrow P 38897
Attorney for Gregory Hendon
500 Griswold St. Suite 2450
Detroit, MI 48226
(313) 617-0107
bgmorrowlaw@gmail.com

Dated: June 15, 2018

10

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all parties of record.

<div style="margin-left:40%">

/s/  Beth Greenberg Morrow
Attorney for Defendant Hendon
500 Griswold St. Suite 2450
Detroit, MI 48226
(313) 617-0107
bgmorrowlaw@gmail.com
P38897

</div>

Dated: June 15, 2018